UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RHONDA R. KEVAN,<br><br>                    Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Respondent. | Case No. 1:08-cv-00292-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Rhonda Kevan's appeal of Respondent's final determination that Petitioner is no longer entitled to Title II disability benefits, because her disability ended as of March 1, 2001. Petitioner has disputed that determination for 14 years, and this is the third time she has sought judicial review. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand to the Commissioner for further proceedings consistent with this decision.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on December 28, 1993, alleging inability to work since September 15,

MEMORANDUM DECISION AND ORDER - 1

1991. In February of 1994, the Social Security Administration (SSA) determined Petitioner was disabled due to malignant melanoma, which met the criteria for Listing 13.05B in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Following a review of Petitioner's medical records, the SSA determined in July of 1997 that Petitioner's melanoma had metastasized to her lungs and continued to meet the criteria for Listing 13.05B. The SSA began another continuing disability review in August of 2000. Following this review, the SSA concluded that medical records after 1997 established Petitioner's melanoma was in sustained remission and thus no longer met the criteria of Listing 13.05B. Accordingly, the SSA notified Petitioner that she was no longer disabled as of March 1, 2001, and that her benefits would terminate on May 31, 2001.

At the time of the termination of benefits, Petitioner was 39 years of age. She had completed high school and attended some college. Her prior work experience at the time included work on an assembly line from 1981 until 1988. Petitioner had no other work experience as of March 1, 2001.

Petitioner requested reconsideration in April of 2001, and a reconsideration hearing was held in late October of 2001. Following the hearing, the SSA affirmed its determination that Petitioner was no longer disabled as of March 1, 2001. Petitioner requested a hearing before an ALJ, a hearing was held before ALJ John Arkoosh on December 6, 2002, and ALJ Arkoosh issued a decision denying Petitioner continuing disability benefits on February 7, 2003. Petitioner then sought review by the Appeals Council, which issued a denial in May of 2003.

In August of 2003, Petitioner filed in this Court a Petition to Review ALJ Arkoosh's decision. *Kevan v. Barnhart*, No. 1:03-cv-00319-LMB (D. Idaho filed Aug. 1, 2003). Prior to completion of the briefing, however, the parties filed a stipulation for remand under "sentence four" of 42 U.S.C. § 405(g), which the Court approved on March 17, 2004. *Id.* at Dkt. 20. On remand, a second hearing was held before ALJ Robin Henrie. In a decision issued on April 8, 2005, ALJ Henrie also found Petitioner was no longer disabled as of March 1, 2001. Petitioner again requested review by the Appeals Council, but, in May of 2008, the Appeals Council concluded the request was not timely. As a result, ALJ Henrie's decision became the final decision of the Commissioner.

On July 16, 2008, Petitioner opened this action by filing a petition for judicial review of ALJ Henrie's decision. (Dkt. 1.) Before briefing commenced, the parties filed a Stipulation for Remand, explaining that one of the two tapes recording the hearing before ALJ Henrie was lost. (Dkt. 12.) On November 3, 2008, the Court remanded the case for a *de novo* hearing under "sentence six" of 42 U.S.C. § 405(g). (Dkt. 14.)

On remand, a third hearing was held, this time before ALJ Kurt Schuman on December 10, 2009. ALJ Schuman issued an unfavorable decision on December 29, 2010, again finding that Petitioner was no longer disabled as of March 1, 2001. On February 3, 2011, Petitioner sent the Appeals Council exceptions to ALJ Schuman's decision and requested further review, but for reasons that are not clear in the record it appears this request languished until March 9, 2013.[1] Almost nine months later, the

---

[1] On March 9, 2013, the SSA sent Petitioner's counsel a notice indicating Petitioner did not timely file exceptions to ALJ Schuman's decision. (AR 473.) The notice further directed

parties filed a Joint Motion to Reopen this case, explaining "the Appeals Council completed the further administrative proceedings on remand." (Dkt. 17 at 2.) Accordingly, the Court has jurisdiction to review ALJ Schuman's decision pursuant to 42 U.S.C. § 405(g).

In early 2014, the Court granted the motion to reopen the appeal, Respondent filed an Answer and the administrative record, and the parties filed briefs on the merits. In addition, the parties consented in writing to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## SEQUENTIAL PROCESS

After a claimant is awarded disability benefits, the SSA periodically evaluates the claimant's impairments to determine whether the claimant remains entitled to disability benefits. 20 C.F.R. § 404.1589. Under 20 C.F.R. § 404.1594(f), the ALJ uses an eight-step sequential process to determine whether a claimant continues to be disabled.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. ALJ Schuman found Petitioner had not engaged in substantial gainful activity from the date of her most recent favorable disability decision, July 1, 1997, through March 1, 2001.

---

Petitioner's counsel to prove that exceptions to ALJ Schuman's decision were timely filed. There is no record of whether the Petitioner or the Appeals Counsel took further action in connection with the March 9, 2013 notice. To the extent this gap in the record calls into question Petitioner's exhaustion of administrative remedies, the Court finds the Commissioner effectively waived the exhaustion requirement by moving to reopen this appeal and proceeding to litigate it on the merits. *See Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) ("The exhaustion requirement . . . is not jurisdictional, and thus, is waivable by either the Secretary or the courts.").

**MEMORANDUM DECISION AND ORDER - 4**

Step two asks whether the claimant has an impairment or combination of impairments that meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found Petitioner had the following medically determinable impairments as of March 1, 2001: hypertrophic cardiomyopathy, a history of seizures, a history of fractured left distal femur with surgery, insomnia, hyperthyroidism, depression, and adjustment disorder with mixed emotional features of anxiety. However, the ALJ found that these impairments, individually or in combination, did not meet or equal a listed impairment.

Because of this finding, the ALJ proceeded to step three, which asks whether there has been a medical improvement in the claimant's disabling impairment after the date of the most recent favorable disability decision. The ALJ determined there was medical improvement in Petitioner's melanoma, because medical evidence showed the cancer was in sustained remission.

At step four, the ALJ must determine whether the claimant's medical improvement relates to the claimant's ability to work—that is, whether the improvement resulted in an increase of the claimant's residual functional capacity (RFC) compared to the claimant's condition at the time of the most recent favorable disability decision. Here, the ALJ found Petitioner's medical improvement related to her ability to work because her impairments no longer met or equaled Listing 13.05B, which was the only basis for Petitioner's most recent favorable disability decision. In cases where medical improvement relates to the claimant's ability to work, the regulations direct the ALJ to skip step five and proceed to step six.

At step six, the ALJ must determine whether the claimant's current impairments are "severe"—meaning the impairments cause a more than minimal limitation in the claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521. The ALJ found Petitioner's medically determinable impairments as of March 1, 2001—hypertrophic cardiomyopathy, a history of seizures, a history of fractured left distal femur with surgery, insomnia, hyperthyroidism, depression, and adjustment disorder with mixed emotional features of anxiety—were severe. Moving to step seven, the ALJ assessed Petitioner's RFC in light of her severe impairments and determined whether Petitioner could perform past relevant work. ALJ Schuman found that Petitioner had no past relevant work but otherwise had the RFC to perform a limited range of sedentary work. In addition to various physical and environmental limitations, the ALJ determined that Petitioner's mental impairments limited her RFC to "simple, routine, and repetitive tasks" at a "low stress job, defined as having only occasional complex decision making required, and only occasional complex judgment required on the job." (AR 488.)

Finally, step eight requires an assessment of whether the claimant can perform other work, considering her RFC, age, education, and past work experience. At this step, the SSA bears the burden of presenting substantial evidence that demonstrates the claimant can perform other work that is available at significant numbers in the national economy. If the claimant can perform such other work, she does not have a continuing disability. After hearing testimony from a vocational expert concerning other work available in the national economy, ALJ Schuman determined Petitioner did not have a continuing disability as of March 1, 2001. This conclusion rested on the finding that

Petitioner could perform jobs such as "document preparer," "food and beverage order clerk," and "addresser," despite her severe physical and mental impairments. (*Id*. at 495.)

## STANDARD OF REVIEW

A claimant with no past relevant work will be determined to be disabled only if her physical or mental impairments are of such severity that she is unable, considering her age, education, and work experience, to engage in any kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).

## DISCUSSION

Once a claimant has been found disabled, "a presumption of continuing disability arises." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985). This presumption shifts the burden of production to Respondent, who can rebut the presumption by producing evidence of medical improvement. *Murray v. Heckler*, 722 F.2d 499, 500–01 (9th Cir. 1983). Here, it is undisputed that Respondent presented sufficient evidence of medical improvement to rebut the presumption of continuing disability due to Petitioner's melanoma. The parties' dispute centers on whether the ALJ committed legal error in determining that Petitioner could adapt to other work despite her remaining impairments.

**MEMORANDUM DECISION AND ORDER - 7**

Notwithstanding the medical improvement of her melanoma, Petitioner claims she remained disabled in 2001 due to a combination of other physical and mental impairments. In particular, Petitioner argues the ALJ ignored medical opinion evidence supportive of this claim—namely, a neuropsychological evaluation prepared by examining psychologist Dr. Craig Beaver on February 3, 2003. Although the ALJ's 13-page decision includes a detailed discussion of Petitioner's medical records—both before and after March 1, 2001—it does not mention Beaver's report. Petitioner's position is that the ALJ's failure to discuss Beaver's report constitutes reversible legal error, because the ALJ must "explain why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation omitted).

After two days of testing and examination in late January of 2003, Beaver found Petitioner's overall mental functioning was in the average range. Consistent with examining psychologist Charles Kaufman's findings in November of 2000, Beaver also found that Petitioner's memory tested within normal limits. But, unlike Kaufman, Beaver opined that Petitioner exhibited "significant problems with executive functioning," including "poor attention and concentration, and . . . significant difficulty with higher-level reasoning, organizing, and problem solving." (AR 462.) He also concluded that Petitioner "does demonstrate evidence of neurocognitive deficits that appear organic in nature, complicated by psychological issues." (*Id.*)

Respondent argues Beaver's report is neither significant to nor probative of Petitioner's continuing disability in 2001, because he did not examine Petitioner until

January of 2003. Respondent also points out that Petitioner's insured status expired in December of 2001, more than one year before Beaver examined her. On the other hand, Petitioner contends Beaver's report is probative of "the severity and continuity of her condition prior to the date last insured." (Dkt. 27 at 3.)

Under the SSA's regulations, the ALJ must consider all relevant evidence. 20 C.F.R. § 404.1520b. The regulations also make it clear that the ALJ must evaluate "every medical opinion" in the record. *Id*. § 404.1527(c). Specifically, the regulations provide that, unless a treating source's opinion is given controlling weight, the ALJ must explain in the decision the weight given to the opinions of examining or non-examining medical sources. *Id.* § 404.1527(e)(2)(ii). It is undisputed that Beaver qualifies as an examining medical source. Accordingly, Beaver's opinion may not be rejected without "specific and legitimate reasons . . . supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Citing *Turner v. Commissioner*, 613 F.3d 1217 (9th Cir. 2010), Respondent nevertheless argues ALJ Schuman properly disregarded Beaver's report because it was prepared after Petitioner's date last insured. But *Turner* did not address whether an ALJ may ignore a medical opinion without explanation; rather, the relevant portion of the case addressed an ALJ's decision to disregard a social worker's opinion that the claimant could not tolerate employment. 613 F.3d at 1223–24. The Ninth Circuit found no error, explaining that the ALJ provided several germane reasons for this decision: the social worker was not an acceptable medical source, his conclusions about the claimant's disability were unsupported and self-contradictory, and he did not evaluate the claimant

**MEMORANDUM DECISION AND ORDER - 9**

during the relevant time period. *Id.* Thus, timing was neither the exclusive nor the primary reason for disregarding the opinion. And, even if timing was the critical factor in *Turner*, it does not follow that a *medical source* opinion may be disregarded based on timing alone.

The Ninth Circuit has repeatedly and "specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.'" *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). This holding flows from the fact that "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith*, 849 F.2d at 1225. As recognized in *Smith*, the principle that a medical source's later diagnosis is relevant to a claimant's earlier condition was widely accepted in the caselaw decades ago. *Id.* at 1225–26 (collecting cases).

Indeed, ALJ Schuman applied the principle to some of the medical evidence in this case. Despite the expiration of Petitioner's insured status in December of 2001, the ALJ discussed the September 2002 report of Dr. Kurt Seppi, who noted that Petitioner suffered a breakthrough seizure due to noncompliance with her medications. (AR 490.) Likewise, the ALJ's discussion of Petitioner's hypertrophic cardiomyopathy specifically cites an endocardiogram and the examination findings of Dr. Robert Duerr—both prepared in December of 2002. (*Id.* at 489–90.) Yet the ALJ inexplicably disregarded Beaver's report, issued less than two months after Duerr's examination. This is puzzling in light of the December 2009 hearing, during which ALJ Schuman specifically

referenced Beaver's report and heard considerable testimony about Beaver's findings. (AR 732, 776, 781, 783–86, 790–91.)

Contrary to Respondent's argument, it makes no difference that the ALJ "considered comparable medical evidence" in the form of Dr. Kaufman's November 2000 examination findings. (Dkt. 26 at 4.) The fact that Kaufman's and Beaver's findings are comparable highlights the critical flaw in ALJ Schuman's decision. Kaufman and Beaver conducted similar, albeit methodologically distinct, evaluations. While Kaufman's findings tend to support the mental limitations the ALJ included in Petitioner's RFC, Beaver's findings arguably support more restrictive limitations. Further, Kaufman did not address the nature or extent of Petitioner's executive dysfunction, whereas one of Beaver's key findings was that Petitioner's "complaints of memory difficulties are primarily related to issues of executive dysfunction." (AR 460.) During the hearing before ALJ Schuman, the non-examining psychological expert, Dr. Kristy Farnsworth, amplified this point: "[Petitioner] obviously had organic [mental] issues [in 2001] because she did complain all along about problems with memory, but it really stems from this ability to take in a lot of information and, you know, act on it." (*Id.* at 786.) Given Beaver's opinion that Petitioner suffered from organic neurocognitive deficits complicated by psychological issues, it is at least plausible that Petitioner's work-related mental functioning in 2001 was more limited than Kaufman's opinion might otherwise suggest.

It is the ALJ's responsibility to resolve conflicting medical evidence, which necessarily entails an analysis of whether the medical evidence conflicts on issues

material to the disability claim. *Morgan v. Commissioner*, 169 F.3d 595, 603 (9th 1999). In this case, the ALJ's conclusions about Petitioner's work-related mental function relied heavily on testimony from a non-examining psychological expert, Dr. Farnsworth. Although a non-examining medical expert's opinion may assist the ALJ in resolving conflicting medical evidence, the ALJ cannot discount an examining physician's uncontradicted opinion in favor of a non-examining expert's opinion without providing "clear and convincing reasons" supported by substantial evidence. *Lester*, 81 F.3d at 830. And, even if the examining physician's opinion is contradicted, the opinion may be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830–31; *see also Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir.1990) (A non-examining physician's "conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician."). Because Beaver's neuropsychological evaluation is probative of Petitioner's mental function during the relevant period, the ALJ should have weighed the evaluation against the other medical evidence of record and explained the reasons for the weight assigned. The ALJ's failure to do so is reversible legal error that must be corrected on remand.

# **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Petitioner Rhonda Kevan's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This remand is a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **April 27, 2015**

Honorable Candy W. Dale
United States Magistrate Judge